Filed 10/17/14  Mazzocco v. Farmers Ins. Exchange CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KAREN MAZZOCCO, | D064209 |
| Defendant and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00099975-CU-IC-CTL) |
| FARMERS INSURANCE EXCHANGE, | |
| Plaintiff and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  Affirmed.  Motion to strike portions of Appellant's Appendix and Appellant's Opening Brief granted.

Karen Mazzocco, in pro. per., for Defendant and Appellant.

Archer Norris and Limor Lehavi, for Plaintiff and Respondent.

I.

INTRODUCTION

Farmers Insurance Exchange (Farmers) defended Karen Mazzocco and her husband, Richard Lee Austin, in a lawsuit brought by Cheryl Johns after an altercation between Austin and Johns at the entrance to the gated community where Mazzocco and Austin lived. The altercation occurred after Austin drove around Johns's car and then stopped short, causing Johns to bump into Austin's car, at low speed. Austin got out of his vehicle and proceeded to assault Johns and damage her vehicle and personal property. Austin ultimately pled guilty to a charge of felony vandalism, which the court agreed would be reduced to a misdemeanor upon his payment of full restitution to Johns.

Johns filed a civil lawsuit against Austin and Mazzocco (the Johns action). Farmers, Mazzocco's automobile insurer, provided a defense to Austin and Mazzocco in the Johns action, subject to a reservation of rights to disclaim coverage and obtain reimbursement of defense costs expended to defend against claims and/or parts of claims that were not potentially covered under the policy.

After three years of litigation, and disagreement between Farmers and Austin and Mazzocco, as to the possible settlement of Johns's claims, Austin and Mazzocco eventually agreed to a joint settlement of $250,000. Farmers did not contribute to the settlement. After the Johns action settled, Farmers filed a lawsuit requesting declaratory relief and seeking reimbursement pursuant to its reservation of rights (the Farmers action). Austin and Mazzocco cross-complained against Farmers for breach of contract

2

and bad faith, seeking reimubursement for the settlement amount that they had paid to Johns.

The Farmers action was ultimately tried before a jury. The jury determined that $45,390.50 of the total $319,981.83 that Farmers spent to defend Austin and Mazzocco had been spent in defense of claims that were not even potentially covered under the automobile policy. Judgment in that amount, plus costs, was entered in favor of Farmers.

Mazzocco, alone, appeals from the judgment, and is proceeding in propia persona in pursuing her appeal. Mazzocco first argues that the judgment fails as a matter of law because the only claim against her in the underlying action was a covered claim, as a matter of law, and because there is not sufficient evidence to support the jury's finding as to her. Mazzocco next contends that the jury instructions were improper, in that the instructions did not permit the jury to consider Farmers's duties with respect to her, separate from Austin, or her duties to Farmers, separate from Austin's duties. Mazzocco further contends that the trial court abused its discretion in failing to allow a witness, who had testified as an expert in the Johns action, to testify as an expert in the Farmers action regarding his opinions concerning Johns. Finally, Mazzocco presents a somewhat convoluted argument related to the trial court's denial of her motion to compel the production of Farmers's counsels' files; in her reply brief, Mazzocco suggests that the claim that she is raising is that the trial court improperly permitted one of Farmers's attorneys to intrude into the case and/or to violate a court order.

After Mazzocco filed her opening brief, Farmers filed a motion in this court to strike portions of Mazzocco's Appellant's Appendix and opening brief, arguing that the Appendix does not comply with the California Rules of Court, in part because it includes, and refers to, documents that are not part of the record from the trial court, and includes documents related to a separate insurance company that was a codefendant in the trial court, but as to whom no appeal was taken.

We agree with Farmers that portions of Mazzocco's Appellant's Appendix and opening brief should be stricken, and we do not consider those documents, those portions of Mazzocco's opening brief, and/or any references to the stricken documents.

We further conclude that Mazzocco's contentions are without merit, and therefore affirm the judgment of the trial court.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Farmers issued an automobile liability policy to Mazzocco to insure a Jeep Grand Cherokee that was registered in her name. The policy, which was in effect on October 17, 2008, had policy limits of $250,000 for bodily injury for each person and $100,000 for property damage, per accident.

At the time of the incident from which this litigation arose, Mazzocco was married to Richard Lee Austin, Jr. The couple lived together in the Rancho Bernardo Fairway Point gated community.

4

On October 17, 2008, Austin was involved in an altercation with Johns, who was working as a licensed vocational nurse and was in her 50s at the time of the incident. Johns was sitting in her car at the entrance to the Fairway Point gate when Austin drove up behind her. Johns told Austin that she was there to visit another homeowner in the community and was waiting to be let through the gate. Austin drove around Johns's car.

Johns followed Austin through the gate. When Austin noticed that Johns had followed him, he stopped short, apparently in an effort to prevent her from entering through the gate. According to Austin, when he stopped short, Johns rear-ended him at a speed of approximately 2-3 miles per hour. The only damage that either car suffered was to Johns's front bumper cover.

After the cars made contact, Austin backed his car toward Johns, who had been backing up, and then got out of his car. Austin was admittedly angry. He kicked the driver's side of Johns's car while she was sitting in it, causing damage to Johns's car. Austin repeatedly yelled at Johns, telling her to back up and saying that she was trespassing. Austin also yelled, "You don't live here, go back to your own neighborhood." At some point, Austin reached into Johns's car to grab a notebook that Johns was holding in her left hand. He threw the notebook to the ground, damaging it. When Johns got out of her car to retreive her notebook, Austin got into Johns's car and backed it up. When Austin got out of Johns's car, he threw her keys on the ground.

While these events were taking place, Johns called 911. Police officers arrived in response to Johns's call and arrested Austin at the entrance gate.

Austin did not report the contact between the cars to the DMV, nor did he exchange insurance details with Johns at the scene.

Austin was charged with several felonies stemming from this incident. He ultimately pled guilty to felony vandalism. At sentencing, the court indicated that the felony charge would be reduced to a misdemeanor if Austin paid full criminal restitution to Johns in an amount that would be determined at a later time. As of June 2009, the People were seeking $70,972.61 in restitution from Austin.

In May 2009, Farmer received a subrogation demand in the amount of $587.98 from Johns's insurance carrier for the cost to repair the minor damage to Johns's front bumper. Farmers issued a reservation of rights letter to Austin and Mazzocco. After issuing the letter, Farmers paid the requested amount.

In October 2009, Johns filed her civil suit against Austin and Mazzocco. Johns asserted causes of action for negligence, motor vehicle negligence, negligent and intentional infliction of emotional distress, negligent and intentional assault and battery, invasion of the right to privacy, and intentional conversion and property damage. Johns alleged that Austin had been driving Mazzocco's vehicle when he stopped behind Johns at the gate on the day of the altercation. In addition to the facts set forth above, Johns alleged that Austin enticed her to leave her car with the promise of returning the notebook that he had taken from her, but instead of returning the notebook, Austin grabbed Johns by the arm, injured her, and prevented her from getting back into her own car. Johns claimed that Austin got into her car and drove it away, and that when he returned, he destroyed Johns's notebook and threw her keys across the street.

The only cause of action in Johns's complaint in which Mazzocco was named was the claim for motor vehicle negligence.

Austin and Mazzocco requested that Farmers defend them in the Johns action, including providing them with independent counsel of their choice at Farmers's expense.[1] Farmers agreed to do so, subject to a full reservation of rights, including the right to disclaim coverage and seek reimbursement. Austin and Mazzocco never advised Farmers that they wished to withdraw their tender of defense.

Farmers ultimately assigned the defense of Austin and Mazzocco to Robert Juskie of Wingert, Grebin, Brubaker & Juskie. Farmers advised Austin and Mazzocco that they could retain counsel of their own choosing at Farmers's expense. Austin and Mazzocco opted to have David Skyer represent them both, as Civil Code section 2860 independent counsel, together with the attorneys that Farmers had appointed. At some point, Skyer sought to be relieved as counsel, citing differences in legal strategy between him and his clients. Austin and Mazzocco then selected Douglas Walters to represent them as independent counsel.

Farmers spent a total of $319,981.83 to defend Austin and Mazzocco in the Johns action.

---

[1]	Austin and Mazzocco's request for "independent" counsel was a request that Austin and Mazzocco be represented by counsel separate from Farmers's counsel. There is nothing in the record that suggests that Austin and Mazzocco ever requested that they each have their own separate attorney.

Farmers had advised Austin and Mazzocco through the Johns action that there were serious coverage issues with respect to their defense and that Farmers expected a significant personal contribution from Austin and Mazzocco toward any settlement, given the lack of evidence that some, or any, of the damages that Johns was seeking were covered damages under the operative policy.

In early 2011, Farmers agreed to contribute $50,000 toward a settlement with Johns, on a cost of defense basis. The case did not resolve as a result of Farmers's settlement contribution offer, and Farmers did not renew the offer at any later point in time.

In September 2011, Austin and Mazzocco jointly settled with Johns for $250,000. The settlement resolved both the Johns action and Johns's criminal restitution claim against Austin.[2] Austin and Mazzocco reached this settlement with Johns without Farmers's participation or consent.

In late October 2011, Farmers and Fire Insurance Exchange (Fire Insurance) jointly filed this action against Austin and Mazzocco. Fire Insurance, a separate entity from Farmers, sought a declaration that there was never any potential for coverage for the Johns action under the homeowners policy that it had issued to Austin and Mazzocco. Farmers sought a declaration that there was never any potential for coverage under its automobile policy, and sought reimbursement of fees and costs that it had expended in defense of the Johns action.

---

[2] By this time, Johns was claiming $553,975 in criminal restitution.

8

Austin and Mazzocco cross-complained against both Fire Insurance and Farmers.

Fire Insurance successfully moved for summary judgment on its claim against the defendants. Final judgment against Austin and Mazzocco, in favor of Fire Insurance, was entered on August 3, 2012. Mazzocco did not appeal from the judgment entered with respect to Fire Insurance.

Farmers's claims against Austin and Mazzocco proceeded to a two-phase trial. In the first phase, the trial court determined that Farmers had a duty to defend Austin and Mazzocco at the time they tendered their defense in the Johns action.

The second phase involved a jury trial on Farmers's claim against Austin and Mazzocco under *Buss v. Superior Court* (1997) 16 Cal.4th 35 (*Buss*), for reimbursement of defense costs expended to defend claims that were not potentially covered, and on Austin and Mazzocco's claims against Farmers for breach of contract and bad faith. The jury ultimately determined that out of the $319,981.83 that Farmers had spent to defend Austin and Mazzocco in the Johns action, $45,390.50 had been spent to defend claims that were not even potentially covered under the policy. The jury rejected Austin and Mazzocco's cross-claims, finding that Farmers had not failed to pay any policy benefits to the defendants.

The trial court entered judgment in favor of Farmers on May 8, 2013. Mazzocco filed a timely notice of appeal.[3]

---

[3]    The notice of appeal also included Austin, but his appeal was subsequently dismissed.

9

## III.

## DISCUSSION

A. *Farmers's motion to strike portions of Mazzocco's Appellant's Appendix and portions of the opening brief*

Farmers moves to strike several portions of the Appellant's Appendix, as well as portions of Mazzocco's opening brief on appeal that cite or refer to, or otherwise rely on, the documents in the Appellant's Appendix that Farmers seeks to strike. The motion is made on the ground that many of the documents that Mazzocco included in the Appellant's Appendix and references in her briefing are not part of the appellate record and may not be considered on appeal. (Cal. Rules of Court, rule 8.204(a)(2)(C) [requires that an appellant provide a summary of the significant facts in the case that are *limited to matters in the record*.]) California Rules of Court, rule 8.204(a)(1)(C) states that an appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." We may decline to consider passages of a brief that do not comply with this rule. (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195.) As a reviewing court, we generally consider only matters that were part of the record at the time the judgment was entered. (*Ibid.*)

The filing of an appendix in an appellate case "constitutes a representation that the appendix consists of accurate copies of documents in the superior court file." (Cal. Rules of Court, rule 8.124(g).) A reviewing court "may impose monetary or other sanctions for

10

filing an appendix that contains inaccurate copies or otherwise violates th[e] rule [regarding appendices]." (*Ibid*.)

Because the documents in the Appellant's Appendix to which Farmers objects were not part of the record in the superior court, we grant Farmers's motion to strike pages 1 AA 13-17, 130-131, 136-176; 2 AA 1, 2-16; and 4 AA 5-43 from the Appellant's Appendix. We also grant Farmers's motion to strike the following portions of the Appellant's Opening Brief: page 1, third and fourth paragraphs; pages 9-12; page 15, first paragraph; page 16, first full paragraph, through page 26, penultimate paragraph; pages 27-28 (except for the filing date of this case); page 31, penultimate paragraph to end of page; page 31 penultimate paragraph; page 39, second full paragraph and last full paragraph; page 54, second full paragraph; pages 57 through 59, first paragraph; page 64, first paragraph; pages 65-72.

Further, we grant Farmers's motion to strike all references in the Appellant's Opening Brief to Mazzocco's claim for relief under the homeowner's policy issued by Fire Insurance, a separate defendant from Farmers, and in whose favor judgment was entered on August 3, 2012. No appeal from that judgment was taken, and that judgment is not at issue in this appeal.

B.    *Mazzocco's appellate issues*

1.    *The jury's verdict is supported by the law and substantial evidence*

The first three arguments that Mazzocco raises on appeal are interrelated. She first contends that she should not be held liable on Farmers's claim for reimbursement because the complaint in the Johns action, for which Farmers provided a defense, named

11

Mazzocco as defendant under the Vehicle Code, only. Mazzocco maintains that the only claim against *her* was therefore, as a matter of law, necessarily a "covered" claim for which no reimbursement would be required. Mazzocco next argues that there was insufficient evidence to support a finding that she has any reimbursment obligation to Farmers. Finally, Mazzocco contends that the trial court erred in "failing to consider Mazzocco as a separate defendant for purposes of the jury instructions." She challenges specific instructions, including instructions 4A, 5A, 300, 3, 2300, 2330, 2334, and 2350, as well as portions of the special verdict form.

These contentions are interrelated in that they are all based on the theory that any liability on Mazzocco's part is entirely separate from Austin's liability. All of these contentions fail because Mazzocco and Austin proceeded to trial on the theory that they were to be regarded a single unit for purposes of liability and damages.[4] During the litigation, they were represented by the same attorney, and they presented a united front both in defending against Farmers's reimbursement claim, as well as in prosecuting their own affirmative cross-claims for breach of contract and bad faith. Further, although there was a point in time, after the presentation of evidence and after the parties had agreed to the jury instructions—during which a question was raised as to whether Austin and Mazzocco might be treated separately in the verdict form (and corresponding jury instructions for purposes of some of the claims), the record does not establish that

---

[4] With respect to her challenge to the trial court's instructions and the special verdict form, Mazzocco also indicates that, at a minimum, she should have been considered separately from Austin with respect to her affirmative claim against Farmers for bad faith.

12

Mazzocco objected to the special verdict form that was ultimatey given to the jury, or that she ever offered her own special verdict form asking the jury to determine whether she, separate from Austin, owed Farmers any reimbursement costs, or whether Farmers had breached the contract or acted in bad faith with respect to her, independent of Austin.  We therefore conclude that Mazzocco cannot prevail on any of the first three claims that she raises on appeal.

      a.     *Mazzocco has forfeited her contention regarding the instructions and verdict form*

Mazzocco contends on appeal that the trial court erred in "failing to consider Mazzocco as a separate defendant for purposes of the jury instructions."  She challenges a narrow subset of the instructions, including instructions 4A, 5A, 300 N, 3, 2300, 2330, 2334, and 2350, as well as portions of the special verdict form.  With respect to this issue, Farmers contends that Mazzocco invited the "error" about which she is complaining, and, in any event, she did not raise an objection to the instructions or special verdict form in the trial court, and thereby failed to preserve this claim.

A challenge to a court's instruction is forfeited by that party's acquiescence to the instruction in the trial court.  (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 856, citing 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 273, pp. 4261-4262, *Hill v. Estate of Westbrook* (1952) 39 Cal.2d 458, 461, and *Buchanan v. Nye* (1954) 128 Cal.App.2d 582, 587.)  Further, a party forfeits a challenges to a special verdict form by failing to object before the court discharges the jury.  (*Jensen v. BMW of North America, Inc*. (1995) 35 Cal.App.4th 112, 131.)

13

In response to Farmers's assertion that Mazzocco failed to raise an objection to the instructions or special verdict form in the trial court, Mazzocco contends that "all of the agreements to content of the Jury Instructions occurred before the issue of separation of the defendants came before the Court on April 29th, 2013." She asserts that she "made her objection" regarding the separation of the defendants, and that therefore her objection was "preserved." However, the record does not support Mazzocco's assertion; rather, the record demonstrates that the issue was raised at one point, but that defense counsel ultimately agreed to the instructions as given, as well as to the special verdict form.

When Austin and Mazzocco's counsel raised the possibility of separating Austin and Mazzocco for purposes of jury instructions and/or the special verdict form, counsel for Farmers noted that as to Farmers's reimbursement claim against the defendants, two cases, *Century Surety Company v. Polisso* (2006) 239 Cal.App.4th 922 (*Century Surety*) and *Axis Surplus Insur. Company. v. Reinoso* (2012) 208 Cal.App.4th 181 (*Axis Surplus*), provided authority for the proposition that when a husband and wife are defended by an an insurance company and both parties benefitted from the money that was paid on their behalf, it is not proper to segregate or allocate the reimbursement between the two insureds. Defense counsel responded to this argument, stating, "Well, I haven't had the benefit of looking at that case. And so, frankly, if that is what it says, that's what it says, but—*and I'll just trust the court's reading of it*." (Italics added.) A short time later, defense counsel stated, "My position was that the—and has been from the beginning that both Dr. Austin and Ms. Mazzocco are entitled to separate consideration. And if in this

14

particular area because of—well, if the case indicates that in this particular area they're not, *then I don't have anything to say against it*."  (Italics added.)

The trial court then offered a brief summary of *Axis Surplus*, explaining that it was a case in which "husband and wife owned a lot of apartments and were sued for a variety —the husband was then prosecuted criminally, and they were then sued civilly and there was a reservation of rights.  So there's a lot of similarities to this case.  And the wife claimed she didn't know about any of the bad conditions in the apartments.  And the court found that the insur[ance company]  did not have to—in their action for recompense or reimbursement did not have to allocate the defenses amongst or—the cost amongst the three insureds."  Defense counsel stated that he believed that since Mazzocco had been sued in the underlying case solely because she was the registered owner of the vehicle that Austin was driving at the time of the incident involving Johns, "had there been a finding against her in the underlying case it would have been per se arising out of the ownership of the vehicle."  However, after examining the questions on the special verdict form, defense counsel *agreed* that all of the questions, with one exception, "could probably be combined."  As to that single question, "question three," which was the "breakdown of what fees and costs are allocable to each individual," counsel for Farmers' asserted that the issue was resolved by the *Axis Surplus* case.

At that point, the trial court said,

> "It [i.e., the special verdict form prepared by Farmers's counsel] appears to be based on the *Reinoso* [i.e. *Axis Surplus*] holding, so that this point—and *if there is some time where you get a chance to read the cases and have more argument this ruling is without prejudice*, but at this point, based on the cases that I do have, it appears to be the appropriate way to go, particularly since there's no evidence of what the breakdown of fees was between the two insureds."  (Italics added.)

Defense counsel immediately stated, "Actually, there was [to] the extent that Ms. Heib testified that there was no additional expense incurred for Ms. Mazzocco, because she didn't have separate counsel.  *And I think I'm just arguing against myself there*."  (Italics added.)  After counsel for Farmers agreed with defense counsel's statement that he was "just arguing against [himself]," the court and the attorneys immediately moved on to other issues.  Mazzocco has not pointed to any other place in the record in which her attorney raised the issue of separating Mazzocco from Austin with respect to the jury instructions and/or verdict forms.

Given this record, defense counsel effectively agreed to the instructions and special verdict from, thereby forfeiting any issue with respect to treating Mazzocco and Austin separately for purposes of the jury's consideration of the claims at issue at trial.  Counsel never raised the issue again despite the trial court's specific invitation to do so.  Mazzocco's attorney's acquiescence to the instructions and verdict form forfeits any claim on appeal that the instructions and verdict form were flawed.

16

b. *Mazzocco may not raise for the first time on appeal the contention that she has no reimbursement obligation to Farmers because the sole claim against her in the Johns action was based on Vehicle Code section 17150*

Mazzocco asserts that Farmers "had no legal basis to sue Mazzocco in the first place" because the claim that Johns asserted against Mazzocco in the Johns action was based on Vehicle Code section 17150. As such, Mazzocco maintains, that claim had to have been at least potentially covered by her insurance policy, and therefore, Farmers should not be entitled to any reimbursement from her. Mazzocco's position on appeal is that she cannot be held liable for any reimbursement to Farmers for costs that it incurred to defend *her* in the Johns action because the only claim asserted against her was one that, according to her, was clearly covered by her insurance policy.

Mazzocco did not raise this argument in the trial court. During the entire trial, she and Austin presented themselves as a single, united entity, and defended against Farmers's claim with a joint defense. Not only is there nothing in the record demonstrating that Mazzocco ever argued to the trial court that *she*, separate from Austin, could not be held responsible for reimbursement costs to Farmers under the authority of *Buss v. Superior Court* (1997) 16 Cal.4th 35 (*Buss*),[5] but it is clear that Mazzocco

---

[5] In *Buss*, *supra*, 16 Cal.4th 35 (*Buss*), the Supreme Court held that an an insurance carrier that defends an insured in a "mixed" action case (i.e., a lawsuit in which some of the claims against the insured are potentially covered and other claims are not) may seek reimbursement from the insured for the costs of defending those claims that are not even potentially covered under the insured's policy.

17

allowed the jury to render a verdict against her and Austin, *jointly*, without any allocation of damages between them, on the question whether Farmers was entitled to be reimbursed for some or all of its defense costs in the Johns action. While counsel for Austin and Mazzocco raised the possibility that Mazzocco might be differentiated from Austin with respect to Farmers's reimbursement claim at one point, as detailed in part III.B.1.a., *ante*, defense counsel ultimately essentially agreed that there was no need to treat them separately with respect to jury instructions or the special verdict form.

---

Buss's insurance company, Transamerica, had agreed to defend him in a a lawsuit that involved a potentially covered cause of action for defamation, together with 26 other causes of action that were not even potentially covered. (*Buss*, *supra*, 16 Cal.4th at p. 42.) Transamerica took the position that only the defamation claim was potentially covered, and provided a defense with a reservation of rights. Transamerica agreed to pay the cost of independent "*Cumis*" counsel. (*Ibid*.)

Buss eventually settled with the party that sued him. He had requested that Transamerica contribute to the settlement, but Transamerica declined. (*Buss*, *supra*, 16 Cal.4th at p. 42.) Buss then sued Transamerica for refusing to contribute to the settlement. Transamerica cross-complained against Buss, seeking reimbursement for the defense costs that it had incurred to defend Buss against claims that were not even potentially covered. (*Id*. at pp. 42-43.)

The *Buss* court explained that an insurer has a duty to defend a case where all of the claims are at least potentially covered, and has no duty to defend a case where none of the claims are potentially covered. (*Buss*, *supra*, 16 Cal.4th at p. 48.) The court noted that in a "mixed action," courts sometimes impose a legal duty on insurers to defend the entirety of the action, and that in such "mixed actions," the insured is unjustly enriched by costs that an insurer spends in the defense of claims that are not potentially covered. The court held that under these circumstances, the insurer is entitled to be reimbursed for those costs. (*Id*. at pp. 49-51.)

Under *Buss*, an insurer is entitled to recover defense costs that it proves by a preponderance of the evidence can be allocated solely to the claims that were not even potentially covered, as long as it reserved its right to do so. (*Buss*, *supra*, 16 Cal.4th at pp. 53-54, 61.) The Supreme Court extended the holding in *Buss* to allow insurance companies to seek reimbursement not only for the costs of defending claims that are not even potentially covered, but also parts of a single claim that are not even potentially covered. (See *Aerojet-General Corp. v. Transport Indem. Corp*. (1997) 17 Cal.4th 38, 59.)

The special verdict form asked the jury only two questions with respect to Farmers's reimbursement claim against Austin and Mazzocco. The first, labeled "Question No. 1," asked, "As part of providing a defense to Dr. Austin and Ms. Mazzocco in the *Johns v. Austin* lawsuit, did Farmers Insurance Exchange pay defense fees and costs solely for claims that were not even potentially covered under the insurance policy?" The jury placed a checkmark next to the word "Yes." The question that immediately followed, which the jury was to answer only if it had answered "Yes" to "Question No. 1," was "What is the sum of defense fees and costs Farmers Insurance Exchange paid in defending the *Johns v. Austin and Mazzocco* lawsuit solely to defend claims for which there was no potential for coverage under the insurance policy?" The jury's response was "$ 45,390.50." (Formatting added.)

The jury was not asked to allocate the costs as between the defense of Austin and the defense of Mazzocco, and Mazzocco never objected to the fact that she and Austin were being treated as a single unit with respect to Farmers's *Buss* reimbursement claim.

Similarly, during closing arguments, Mazzocco never objected to the argument made by Farmers's attorney, in which the attorney addressed Mazzocco and Austin's liability together, and indicated that they could both be held liable for the reimbursment costs:

> "But even Mr. Chapin [an expert for Austin and Mazzocco] conceded that Farmers is entitled to recover at least $507.00 for work that it paid the lawyers to do that was solely to defend punitive damages claims. He admitted that on the stand here today. That if it was—amounts to is $507.00, Farmers should recover that back from *Dr. Austin and Ms. Mazzocco*. [¶] So on the verdict form that you will receive when you start your deliberations, you'll see the first

19

question is, did Farmers incur any defense costs to defend Dr. Austin and Ms. Mazzocco for claims that were not covered by the policy? The answer to that is yes. Mr. Chapin told us that the answer to that is yes. We're only really arguing right now about the amount. We know that at minimum that amount starts at $507.00, but you should not stop at $507.00 . . . ."

Counsel for Austin and Mazzocco made no attempt to distinguish between Austin and Mazzocco during his closing argument, or to suggest that their liability might be anything other than coextensive, for purposes of Farmers's reimbursement claim.

"[A] defendant who chooses not to request allocation of damages may not challenge the judgment on the ground that he should only be held liable for a portion of the damages." (*White v. Inbound Aviation* (1999) 69 Cal.App.4th 910, 930-931; *Fein v. Permanente Medical Group* (1985) 38 Cal. 3d 137, 156 [a defendant cannot complain about undifferentiated special verdict where that defendant failed to request differentiation].)

At trial, Mazzocco and Austin's entire theory of the case was that they, *together*, owed Farmers $507 in reimbursement costs, at most. Mazzocco never presented a separate defense to Farmers's action; the defendants' joint answer to Farmers's complaint raised the same defenses as to both of them and did not differentiate between Mazzocco and Austin in any way.[6] This joint defense did not change at any point in the trial court.

---

[6]     The defenses presented by Mazzocco and Austin jointly in the "Answer of defendants Richard Lee Austin, Jr., M.D. and Karen Mazzocco to Plaintiffs['] Complaint" were: "That the complaint on file herein, and each and every cause of action therein, fails to state facts sufficient to constitute a cause of action"; "That the complaint on file herein,

20

Thus, Mazzocco proceeded to trial on a theory that she and Austin were entitled to have Farmers cover the costs of their *joint* defense in the Johns action because all of Johns's claims were covered by the Farmers insurance policy. Mazzocco may not change her theory from what the defense presented at trial to a theory that the costs of her defense in the Johns action were covered by the insurance policy and therefore, Farmers is not entitled to any reimbursement costs *from her*, separate from Austin, in this action. (See *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 (*Richmond*) [a party may not change his or her theory of the case on appeal]; see also *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1065-1066 ["[Appellant] did not raise this argument below. Nor did it request jury instructions embodying these principles. Its contention, therefore, may not be raised for the first time on appeal."].)

"The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240-24; see *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780; *Bank of America v. Cory* (1985) 164 Cal.App.3d 66, 78, fn. 4.) The general rule confining the parties on appeal to the theory advanced in the trial court is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that "contemplates a factual situation the consequences of which are open to

and each and every cause of action therein, is barred by the doctrine of unclean hands"; and "That the complaint of file herein, and each and every cause of action therein is barred by the doctrine of laches."

21

controversy and were not put in issue or presented at the trial." (*Panopulos v. Maderis* (1956) 47 Cal.2d 337, 341.)

    c.  *Mazzocco has forfeited her contention on appeal that there is insufficient evidence to support the jury's verdict*

  Mazzocco contends that the judgment against her should be reversed because the evidence that Farmers presented is insufficient to support its claim for reimbursement as to her. This contention fails for the same reason that Mazzocco's contention that she cannot be required to reimburse Farmers because the sole claim asserted against her in the Johns action necessarily had to have been covered, fails. Again, Mazzocco never differentiated her defense from Austin's at trial, and never argued that the evidence demonstrated that she, as distinguished from Austin, could not be required to reimburse Farmers for costs incurred in her defense.

  There was abundant evidence that Farmers spent money in the Johns action to defend claims that were not even potentially covered by Mazzocco's insurance policy. Specifically, there was evidence demonstrating that Farmers paid Mazzocco and Austin's shared attorneys for time spent defending against Johns's claims that Austin assaulted her and caused her psychological injuries resulting from his threatening conduct, his kicking her car, and his driving her car away. Essentially, Farmers paid for the defense of claims arising out of an intentional tort committed by Austin. Further, Farmers paid for the defense against Johns's punitive damages claims. The policy does not provide coverage for bodily injury that does not arise out of the ownership, maintenance or use of a car, and it does not cover punitive damages. As Farmers's expert testified in this action, the

attorneys spent a significant number of hours working on these issues, and none of the costs of their services expended on these issues were even potentially covered under the Farmers insurance policy. In fact, Farmers's expert determined that Farmers incurred $62,665 in costs to defend claims that were not even potentially covered. This testimony, alone, is sufficient to support the jury's verdict that Farmers is entitled to $45,390.50 in reimbursement for its defense of Mazzocco and Austin in the Johns action.

As Farmers contends, even if these damages had been allocated solely to the defense of claims against Austin, rather than to claims against Austin and Mazzocco jointly, Mazzocco still received some benefit from the payment of these defense costs, and therefore could be held liable for them in this action. " '[T]he community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and *regardless of whether one or both spouses are parties to the debt or to a judgment for the debt*.' " (*Century Surety*, *supra*, 139 Cal.App.4th at p. 942, quoting Fam. Code, § 910 and citing Code Civ. Proc., § 695.020, *Lezine v. Security Pacific Fin. Services, Inc*. (1996) 14 Cal.4th 56, 64.) "More specifically, community property is liable for a money judgment against one spouse whether or not the other spouse is a named defendant in the underlying action." (*Century Surety*, at p. 942.)

"The right to reimbursement may 'run[] against the person who benefits from "unjust enrichment" ' (*Buss*, *supra*, 16 Cal.4th at p. 51), but it should do so only to the extent the person actually benefits." (*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1273, italics omitted.) That benefit may include the

23

benefit of eliminating potential liability, and not simply the time or costs expended on any particular person or entity being defended. (*Axis Surplus*, *supra*, 208 Cal.App.4th at p. 195.) Where a spouse's community property interest could be liable for obligations, that spouse receives a benefit from an insurer's defense and/or settlement of claims against the insured, and that spouse may be held jointly liable for *Buss* reimbursement costs to the insurance company. (*Id.* at pp. 195-196.)

2.      *The trial court did not abuse its discretion in not permitting Dr. Mark Kalish to testify as an expert in this action*

Mazzocco complains that the trial court should have permitted Dr. Mark Kalish to testify as an expert *in this action* regarding his impressions of Johns and her credibility. Dr. Kalish, a psychiatrist, was retained as an expert by Skyer on behalf of Austin and Mazzocco *in the Johns action* to evaluate Johns's psychiatric condition. Dr. Kalish was then included on Farmers's witness list for trial in this action, as a percipient witness, regarding the defense costs that Farmers paid to him for his work in the Johns action. Neither party designated Dr. Kalish as an *expert* in this action.

Farmers learned during trial that Mazzocco intended to call Dr. Kalish to testify in this action regarding his expert opinions with respect to Johns's mental condition and her credibility. Farmers objected on the ground that Dr. Kalish had not been designated as an expert in this case. The trial court agreed that a nondesignated expert may not offer expert opinions. The court therefore ruled that Dr. Kalish would be permitted to provide percipient witness testimony in this action, but would not be permitted to offer his expert opinions regarding his evaluations of Johns's psychiatric state. However, the court did

24

allow Mazzocco to introduce Dr. Kalish's opinions in the Johns action, which had been transmitted to Farmers through counsel for Mazzocco and Austin in the Johns action, for the limited purpose of showing the effect that Dr. Kalish's opinions had on Farmers's conduct.

"Trial court rulings on the admissibility of evidence, whether in limine or during trial, are generally reviewed for abuse of discretion." (*Pannu v. Land Rover North America, Inc*. (2011) 191 Cal.App.4th 1298, 1317.) Even if an abuse of discretion can be demonstrated, an appellant must also demonstrate that the exclusion of the evidence in question resulted in a miscarriage of justice. (Evid. Code, § 354; see also *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282.)

Mazzocco contends that the trial court should have permitted Dr. Kalish to offer his expert opinions through live testimony in this action, despite her admitted failure to designate him as an expert in this case. Mazzocco correctly notes in her briefing that Dr. Kalish had been designated as an "expert in the underlying case" (i.e., in the Johns action), but was designated merely as a "witness" in this case. Mazzocco apparently relies on the fact that Dr. Kalish had been designated as an expert in a different, related action, to argue that he should have been permitted to provide his expert opinions in this action.

Dr. Kalish's designation as an expert in the Johns action does not carry over to this case. Code of Civil Procedure section 2034.300 provides that "on [the] objection of any party who has made a complete and timely compliance with Section 2034.260, the trial court *shall exclude* from evidence the expert opinion of any witness that is offered by any

party who has unreasonably failed to . . . [¶] . . . [l]ist that witness as an expert under Section 2034.260." Given that the trial court is required to exclude from evidence the expert opinion of any witness who was not listed as an expert witness as required by statue, the trial court clearly did not abuse its discretion in disallowing Dr. Kalish from testifying as to his expert opinions regarding Johns and her credibility.

3. *The final issue that Mazzocco raises in her brief has been stricken; in any event, Mazzocco has not set forth an appealable issue*

As noted, we have granted Farmers's motion to strike portions of Mazzocco's opening brief that rely on matters that are not included in the record or that were not properly included in the record. This includes the entirety of Mazzocco argument titled "ISSUE FIVE: The Court Improperly Allowed the Issue of Coverage to be Injected into the case of Cheryl Johns v Mazzocco, then denied all discovery to Mazzocco as to: The Basis of Farmers' Coverage Position; The Basis of No Settlement Contributions, & The Basis for and Amount of Buss Fees Farmers Claimed Mazzocco Owed." Because we have stricken this argument in its entirety, there remains no "issue" for us to resolve.

To the extent that we might be inclined to address Mazzocco's final "issue" on its merits, we would determine that this issue has been forfeited because (a) it is not clear from Mazzocco's opening brief what the issue is that she is trying to raise; and (b) to the extent that Mazzocco attempts to explain the issue in her reply briefing, Mazzocco's complaint appears to concern something that occurred *in the Johns action*, which has concluded and is not on appeal, and not anything that occurred in the matter that is currently on appeal.

26

In her reply brief, Mazzocco asserts that Farmers is incorrect in asserting in its respondent's brief on appeal that Mazzocco's "Issue Five" is an attempt to challenge the trial court's denial of a motion to compel that she made in this matter, i.e., the Farmers action. She explains that, instead, the issue that she is raising "is the Court's error in allowing Farmers/Fire to intervene with coverage opinions in the case of *Johns v. Mazzocco* in complete defiance of a Court Order specifically prohibiting them from doing so." She repeats that her "point was not the Motion to Compel; it was the *illegal* intervention of Coverage Counsel Lehavi into the case in defiance of a Court Order."

It is simply not clear to us what Mazzocco is referring to when she discusses intervention "into *the case*." Since there has been no "intervention" by either insurance company in the Farmers action, it would appear that she is complaining about attorney conduct *in the Johns action*. However, that matter settled. Mazzocco may not challenge the court's rulings in the now long-ended Johns action in her appeal in the Farmers action.

Given the state of this record, Mazzocco's failure to cite to the portions of the record on which she is relying in her opening brief, and her failure to make any clear argument with respect to this issue, we conclude that Mazzocco is not entitled to any relief with respect to the issue that she titles "Issue Five" in her opening brief.

27

IV.

DISPOSITION

The judgment of the trial court is affirmed.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.