Filed 3/5/15  Bartile Roofs v. Employers Mut. Casualty Ins. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BARTILE ROOFS, INC., et al.,<br><br>　　　　Plaintiffs and Appellants,<br><br>　　v.<br><br>EMPLOYERS MUTUAL CASUALTY COMPANY,<br><br>　　　　Defendant and Respondent. | B253243<br><br>(Los Angeles County<br>Super. Ct. No. GC044918) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, John P. Doyle, Judge.  Affirmed.

　　　　John K. Saur, for Plaintiffs and Appellants.

　　　　Hirsch Closson, Robert V. Closson, and Jodi E. Lambert, for Defendant and Respondent.

Appellants Bartile Roofs, Inc. ("Bartile"), its president, Lewis Evans, and its vice-president, Michael Evans (jointly, the "Evans Brothers"), appeal from a judgment in favor of respondent Employers Mutual Casualty Company ("EMC"). This case concerns EMC's alleged duty to defend the Evans Brothers in an underlying lawsuit against Bartile in which the Evans Brothers were not named parties. Appellants challenge the trial court's order sustaining EMC's demurrer to appellants' first amended complaint and awarding judgment in favor of EMC. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

### A. The Underlying Action and Wyoming Action

Bartile is a roofing subcontractor. In late 2002, general contractor Jacobsen, Inc. ("Jacobsen") hired Bartile to install roofing at a resort complex that F.S. Jackson Hole Development Company, LLC ("FSJH") was developing in Jackson Hole, Wyoming. A dispute arose between Jacobsen and FSJH, and in March 2004, Jacobsen filed an action in Los Angeles Superior Court against FSJH for money due, *Jacobsen Construction Company, Inc. v. F.S. Jackson Hole Development Company, LLC*, Case No. BC312011 (the "Underlying Action"). Jacobsen also cross-complained against various subcontractors, and in a December 2006 Roe amendment to its third amended cross-complaint, Jacobsen named Bartile, but not either of the Evans Brothers, as a cross-defendant.[1]

Bartile tendered its defense of the Underlying Action to EMC, from which it held commercial general liability policies (the "Policies"). It is undisputed that EMC provided a defense for Bartile under a reservation of rights through June 2009. Appellants allege that the Evans Brothers, who were not named as defendants or mentioned in the third amended cross-complaint, are insured individuals under the Policies and properly tendered a defense to EMC. Appellants further allege that EMC provided an

---

[1] Since only Jacobsen's cross-complaints in the Underlying Action are at issue in this appeal, for simplicity's sake, we hereafter refer to "cross-defendants" as "defendants."

2

unconditional defense to the Evans Brothers during the same period EMC provided a defense for Bartile.

In August 2007, EMC sought a declaration in the United States District Court for the District of Wyoming that it owed no duty to defend Bartile, *Employers Mutual Casualty Company v. Bartile Roofs, Inc.*, Case No. 07-CV-182-D (the "Wyoming Action"). In August 2008, the district court held that the claims and actions against Bartile in the Underlying Action did not trigger EMC's duty to defend. Bartile appealed to the United States Court of Appeals for the Tenth Circuit, and in September 2010, the Tenth Circuit affirmed the district court's order.

In June 2009, EMC notified Bartile that it was withdrawing from Bartile's defense in the Underlying Action. In October 2009, while Bartile's appeal to the Tenth Circuit was pending, Jacobsen filed its fourth amended cross-complaint against Bartile, the only remaining defendant, adding negligence allegations. The Evans Brothers were not named as defendants. In light of the new allegations, Bartile tendered its defense and indemnity of the fourth amended cross-complaint to EMC on October 21, 2009. The letter from Bartile's lawyers to EMC stated, "our office is representing Bartile Roofs, Inc.," and requested that EMC "please allow this correspondence to serve as our tender of defense and indemnity on behalf of Bartile Roofs, Inc." Even though the letter by its terms was sent on behalf of Bartile only, the Evans Brothers alleged that this letter also tendered their defense and indemnity request to EMC.

In November 2009, EMC denied Bartile's tender, stating, "we respond to your letter of October 23, 2009 [*sic*] wherein you request that EMC provide defense and indemnity to Bartile Roofs, Inc. . . . [¶] It is our conclusion . . . that EMC does not owe Bartile a defense or indemnity for allegations contained in the new cross-complaint." EMC's denial letter was silent as to the Evans Brothers.

Later in November 2009, EMC filed a petition for further relief in the Wyoming Action. It thereafter filed a motion for summary judgment. The district court granted summary judgment in March 2011, holding that EMC had no duty to defend or indemnify Bartile against the fourth amended cross-complaint. In April 2011, Bartile

3

appealed the order. The Tenth Circuit affirmed in April 2012, again confirming that EMC had no duty to defend Bartile in the Underlying Action.

In January 2010, Bartile prevailed against Jacobsen at trial in the Underlying Action with the fourth amended cross-complaint as the operative pleading.

## B.      The Instant Action

Appellants filed their complaint against EMC in this action on March 25, 2010. After a long stay, presumably relating to the active litigation in the district court and Tenth Circuit, the case was returned to the active docket in May 2013.[2] EMC demurred to the complaint, but instead of opposing, appellants filed a first amended complaint on July 10, 2013. They alleged causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing based on EMC's failure to defend the Evans Brothers in the Underlying Action after withdrawing its defense in June 2009.

Appellants alleged that, in addition to Bartile, the Evans Brothers were also defendants in the cross-complaints, that all three appellants tendered their requests for defense and indemnity, and that EMC did, for a time, defend both Bartile and the Evans Brothers in the Underlying Action. Appellants also alleged that although EMC's defense of Bartile was provided under a reservation of rights, EMC defended the Evans Brothers unconditionally, without retention of any right to withdraw policy benefits from them. This unconditional defense, according to appellants, constituted a waiver by EMC of its right to withdraw policy benefits from the Evans Brothers or, alternatively, estopped EMC from doing so. Finally, appellants alleged that while Bartile and the Evans Brothers all tendered their defense and indemnity of the fourth amended cross-complaint to EMC, EMC's denial letter was issued only to Bartile and did not refer to the Evans Brothers.

On August 23, 2013, EMC filed its demurrer to appellants' first amended complaint. EMC argued that appellants' first amended complaint was barred by the doctrines of res judicata and collateral estoppel based on the judgments in the Wyoming

---

[2]      It is unclear why the stay was not lifted until May 2013, given that the district court and Tenth Circuit proceedings were resolved one year earlier.

4

Action, and that the first amended complaint also failed as to the Evans Brothers because they were not defendants in the Underlying Action and did not tender their defense to EMC. In support of its demurrer, EMC sought judicial notice of the third and fourth amended cross-complaints in the Underlying Action, and certain documents filed in the Wyoming Action, including the district court and Tenth Circuit orders holding that EMC had no duty to defend Bartile. Along with its reply, EMC also filed a supplemental request for judicial notice, seeking judicial notice of Jacobsen's Roe amendment adding Bartile to the third amended cross-complaint, a declaration appellants' counsel previously filed in this action, and appellants' original complaint in this action.

The trial court sustained EMC's demurrer without leave to amend.[3] The court sustained the demurrer as to Bartile because res judicata barred it, a conclusion Bartile does not dispute. The court further held that, based on the pleadings, the documents attached to the pleadings, and documents subject to judicial notice, the Evans Brothers' individual claims also were barred by res judicata: "Any claim for defense costs expended in the [Underlying Action] on behalf of Bartile, whether by Bartile or[] the [Evans Brothers], would be subject to the res judicata effect of the [district court and Tenth Circuit] orders." The court also found that "the facts from the [first amended complaint], its attachments, and those judicially noticed establish there was no breach of a duty to defend the individuals, who were not named in the subject lawsuits individually, and there was no tender by those parties of the defense to the insurer."

Appellants timely appealed.

## DISCUSSION

### A. EMC's Supplemental Request for Judicial Notice

We first address appellants' objection to the court's judicial notice of three exhibits filed with EMC's reply brief: the Roe amendment adding Bartile to the third amended cross-complaint in the Underlying Action; the declaration appellants' counsel filed earlier in this action, which attached a report of trial proceedings from the

---

[3] The court also ruled on EMC's motion for sanctions, which is not a subject of this appeal.

5

Underlying Action; and the original complaint in this action.   The court expressly referenced the Roe amendment and appellants' counsel declaration in support of its conclusion that the Evans Brothers were never named as parties to the Jacobsen cross-complaints.[4]

Appellants do not contend that judicial notice of these documents was improper as a general matter, but that their introduction on reply was improper, because it deprived them of the reasonable opportunity to respond as required by Section 455, subdivision (a) of the Evidence Code.  That section mandates that if the trial court "has been requested to take . . . judicial notice of such matter, the court shall afford each party reasonable opportunity . . . to present to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed."

EMC counters that both the original complaint and the declaration were already in the court's file.  EMC concedes that the Roe amendment itself was new, but argues that Bartile's identity as a Roe defendant in the third amended cross-complaint was referenced in the report of trial proceedings attached to counsel's declaration.

As EMC has noted, it did not introduce its reply evidence to address substantive issues in the first instance or to fill gaps created by appellants' opposition to the demurrer.  Instead, EMC merely introduced the documents to further its argument that the Evans Brothers were not named defendants in the Underlying Action.  But the documents were not necessary for that determination.  In its original uncontested request for judicial notice, EMC already had sought judicial notice of the third and fourth

---

[4]      Appellants also take issue with the trial court's supposed "demands for 'evidence'" on demurrer.  Appellants recite a portion of the court's tentative order, which states, "In response to the showing by the moving party, plaintiffs have failed to submit any evidence whatsoever to show that they actually have evidence that there was some separate defense of these plaintiffs owed or undertaken, which the court construes as an admission that the individual plaintiffs, who would be in the best position to provide such evidence, do not in fact have such evidence."  Appellants have taken this statement out of context.  It is unmistakably part of the court's tentative order granting EMC's motion for sanctions and completely separate from the order sustaining the demurrer.  Appellants' suggestion that the court made demands for evidence on demurrer is therefore not well taken.

6

amended cross-complaints, neither of which named the Evans Brothers as defendants. Additionally, appellants' own brief in opposition to the demurrer admits that the Evans Brothers "were certainly *potential* defendants" in the Underlying Action. As potential defendants, the Evans Brothers by definition could not be actual defendants. This admission is tantamount to a concession that the Evans Brothers were not, in fact, named defendants in the Underlying Action. (See *Federer v. County of Sacramento* (1983) 141 Cal.App.3d 184, 186.) Thus, the court had a sufficient basis to conclude that the Evans Brothers were not parties to the Underlying Action without the documents in EMC's supplemental request for judicial notice. Accordingly, the documents were not of "substantial consequence to the determination of the action" within the meaning of Evidence Code section 455, subdivision (a), and the court was not required to provide appellants with an opportunity to be heard.[5]

## B. Order Sustaining Demurrer

### 1. Standard of Review

The standard of review we apply to the court's order sustaining the demurrer is well-settled. "[W]e examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. . . . [Citations.]" (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) "'"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]'" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) "'Where written documents are the foundation of an

---

[5] On appeal, appellants submitted a declaration by their counsel stating that he objected at the demurrer hearing to EMC's supplemental request for judicial notice, the documents, and the related argument presented by EMC on reply. EMC does not contest the accuracy of the declaration but contends that it constitutes improper new evidence and contains impermissible hearsay. We agree with EMC that we should not consider counsel's declaration. However, appellants' argument would fail regardless, because the declaration discloses that appellants did have an opportunity to be heard on the matter.

7

action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer. [Citation.]'" (*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London* (2008) 161 Cal.App.4th 184, 191.)

"Under the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts that are judicially noticed.' [Citation.] 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded. . . .' [Citations.]" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 (*Hoffman*).)

We will affirm a "'trial court's decision to sustain the demurrer [if it] was correct on any theory. [Citation.]' [Citation.] Accordingly, 'we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citations.]' [Citation.]" (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034-1035 (*Berg & Berg*).)

### 2. The Court Properly Sustained EMC's Demurrer[6]

Appellants' theory of the case may be summarized as follows. The Evans Brothers, as either defendants or potential defendants in the Underlying Action, tendered a defense, along with Bartile, to EMC. EMC agreed to and did provide a defense in the Underlying Action for Bartile and the Evans Brothers. While EMC defended Bartile under a reservation of rights, EMC provided an unconditional and unqualified defense for the Evans Brothers. When the district court issued its declaratory judgment, affirmed by the Tenth Circuit, holding that EMC had no duty to defend Bartile, EMC thereafter

---

[6] Although not entirely clear, it does not appear that appellants intended to appeal the trial court's demurrer order as it applied to Bartile. If appellants did intend to do so, they have forfeited that appeal by failing to adequately raise and argue the matter. (*Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956.) Further, appellants have not argued on appeal that they should have been given leave to amend, and, accordingly, they have forfeited that issue. (*Kelly v. CB & I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 451-52 (*Kelly*); *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1336, fn. 2 (*Lyons*)).

8

wrongfully ceased defending the Evans Brothers because the district court judgment only applied to Bartile, not the Evans Brothers. Because EMC agreed to provide an unconditional and unreserved defense to the Evans Brothers, EMC was barred by the doctrines of waiver and estoppel from withdrawing its defense. EMC continued its wrongful repudiation of the Evans Brothers' defense when Jacobsen filed its fourth amended cross-complaint because, although not expressly named as defendants in that pleading, the Evans Brothers were either defendants or potential defendants encompassed within its fictitious defendant allegations. The subsequent decisions by the district court and Tenth Circuit, again, applied only to Bartile.

In light of appellants' pleadings, the documents appellants attached to their pleadings, and documents subject to judicial notice, we find this theory unavailing. We conclude that the trial court properly held that the Evans Brothers did not tender a defense and that EMC did not breach its duty to defend the Evans Brothers. Therefore, we hold that the court did not err in sustaining EMC's demurrer.

### a. Duty to Defend Law

"'Liability insurance usually imposes two separate obligations on the insurer: (1) to indemnify its insured against third party claims covered by the policy (by settling the claim or paying any judgment against the insured); and (2) to defend such claims against its insured (by furnishing competent counsel and paying attorney fees and costs.)' [Citation.] The duty to defend is generally determined 'from all of the information available to the insurer at the time of the tender of the defense,' although later developments may impact the insurer's duty to defend. [Citations.] [Citations.] [¶] The duty to defend is broader than the duty to indemnify. Indemnification is due for claims actually covered by the policy but an insurer 'must defend a suit which *potentially* seeks damages within the coverage of the policy.' [Citation, original italics.] '[A] bare

9

"potential" or "possibility" of coverage [is] the trigger of a defense duty.' [Citation.]" (*Howard v. American Nat. Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 519-20.)[7]

The duty to defend arises when the insured tenders defense to the insurer. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 46 (*Buss*); *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.* (2009) 175 Cal.App.4th 183, 200) (*OneBeacon)*.) "'Tender can be either formal or constructive. [Citations.]' [Citation.] Thus, although the duty to defend ordinarily arises after receipt of an actual tender of defense, it may arise upon receipt of 'constructive notice' of the contractual duty to defend. [Citation.]" (*Ibid.*) Under the doctrine of constructive tender, "given the appropriate circumstances, the law will charge a party with notice of all those facts which he might have ascertained had he diligently pursued the requisite inquiry. [Citations.]" (*California Shoppers, Inc. v. Royal Globe Insurance Co.* (*California Shoppers*) (1985) 175 Cal.App.3d 1, 37.)

### b.    The Evans Brothers Did Not Tender Their Defense

Appellants allege that the Evans Brothers "tendered their request for defense and indemnity against the Jacobsen cross-complaints to EMC," and that "[o]n October 21, 2009 . . . the plaintiffs tendered the defense and indemnity of the Jacobsen Fourth Amended Cross-Complaint to EMC." Appellants contend that, on demurrer, these allegations must be accepted as true. We disagree.

Appellants' tender allegations are contradicted by the October 21, 2009, letter tendering the fourth amended cross-complaint to EMC, attached as Exhibit 3 to the first amended complaint. The letter on its face constitutes a tender by Bartile, not the Evans Brothers. Appellants nonetheless claim the October 21, 2009, letter actually supports

---

[7]    Based solely on the Tenth Circuit's choice of law determination, EMC contends that Wyoming law applies to the analysis of its duty to defend. EMC has not made a serious attempt to support its argument. It fails to discuss choice of law, conflict of laws, comity, or full faith and credit and to analyze why, under any of these principles, Wyoming law, as opposed to California law, should apply. In fact, both EMC and appellants cite only California law in their duty to defend analysis. Accordingly, we deem the issue forfeited and apply California law in our duty to defend analysis. (*AICCO, Inc. v. Insurance Co. of North America* (2001) 90 Cal.App.4th 579, 595.)

their allegations. They argue that the plural possessive in the statement, "please allow this correspondence to serve as *our* tender of defense and indemnity on behalf of Bartile Roofs, Inc.," indicates inclusion of the Evans Brothers. We reject this argument. The tender letter was sent by Bartile's attorneys, who opened the letter with the statement, "our office is representing Bartile Roofs, Inc. in this matter." The use of "our" in both statements clearly refers to Bartile's attorneys, and not to the Evans Brothers, who are not mentioned anywhere in the letter. Further, the letter unequivocally states that it shall serve as a tender "on behalf of Bartile Roofs, Inc." and makes no reference whatsoever to the Evans Brothers. Because the October 21, 2009, letter tendering Bartile's defense of the fourth amended cross-complaint contradicts the allegations that the Evans Brothers tendered their defense to EMC, we disregard these allegations. (*Hoffman*, *supra*, 179 Cal.App.4th at p. 400.) Accordingly, appellants have not adequately alleged a formal tender of the Evans Brothers' defense.

Alternatively, appellants contend that the doctrine of constructive tender applies. Appellants appear to argue that even if the Evans Brothers failed to make a formal tender, EMC should be charged with notice of the supposed fact that the Evans Brothers were defendants, or at least potential defendants, in the Underlying Action, giving rise to a duty to defend. We disagree. Even if EMC had engaged in a full investigation, it would not have been on constructive notice of any duty to defend the Evans Brothers because they were not defendants in the Underlying Action, and their supposed status as potential defendants is too speculative to put EMC on notice of a duty to defend.

Appellants allege that the Evans Brothers "were each defendants in each of the Jacobsen cross-complaints." As discussed, these allegations are directly contradicted by judicially noticed documents, which make plain that only Bartile—and not the Evans Brothers—was a defendant in the Underlying Action. Moreover, by advancing the argument that the Evans Brothers were potential defendants in the Underlying Action, Appellants have conceded that that the Evans Brothers were not named defendants in the Underlying Action.

11

Inconsistently with their allegations that the Evans Brothers were actually defendants, appellants contend on appeal that the Evans Brothers fell "within the group of fictitiously named cross-defendants" in the fourth amended cross-complaint and were, "overtly potential cross-defendants" in the Underlying Action. Appellants further note that "Lew Evans" and a "Mr. Evans" were specifically mentioned in the fourth amended cross-complaint. Appellants argue that as potential defendants the Evans Brothers faced potential liability and were entitled to a defense. We reject this argument.

Appellants' purported status as potential defendants is too speculative to trigger the principle of potential liability under an insurance policy. "An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114.) Nor may an insured "speculate about unpled third party claims to manufacture coverage." (*Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 538.) This is precisely what the Evans Brothers seek to do. Appellants speculate that Jacobsen could have at any time amended its fourth amended cross-complaint to add the Evans Brothers. But the law does not impose a duty to defend on insurers based on such conjecture. And if the law does not impose a duty to defend under such circumstances, EMC clearly cannot be charged with notice of a duty to defend the Evans Brothers based upon the same conjecture and speculation. (See *California Shoppers*, *supra*, 175 Cal.App.3d at p. 37.) Accordingly, there was no constructive tender of the Evans Brothers defense.

###### c.     EMC Did Not Breach Its Duty to Defend the Evans Brothers

The duty to defend only arises upon the insured's tender of a defense. (*Buss*, *supra*, 16 Cal.4th at p. 46; *OneBeacon, supra,* 175 Cal.App.4th at p. 200). Here, the Evans Brothers never formally or constructively tendered their defense to EMC. Therefore, EMC did not have a duty to defend the Evans Brothers.

Based on our conclusion that the Evans Brothers did not tender their defense and that EMC accordingly had no duty to defend, we must disregard as unsupported by fact

12

or law appellants' further allegations that EMC provided and later withdrew its unconditional and unqualified defense of the Evans Brothers.[8] (*Hoffman*, *supra*, 179 Cal.App.4th at p. 400. ["'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded. . . .' [Citation.]")

Appellants' causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing are premised on EMC's alleged failure to defend the Evans Brothers after its withdrawal of their defense. However, EMC never had a duty to defend the Evans Brothers, so it could not have breached such a duty. Having failed to allege a breach in either contract claim, appellants have failed to state facts sufficient to constitute a cause of action. The court accordingly did not err in sustaining EMC's demurrer.[9]

## DISPOSITION

The judgment is affirmed. EMC is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

---

[8] Because we reject appellants' allegations that EMC provided an unconditional defense, we also reject their allegations that the doctrines of waiver and estoppel were triggered by EMC's supposed withdrawal of its defense.

[9] Because we conclude EMC did not have a duty to defend, we need not address whether the Wyoming Action is res judicata on this action.